# Yerkes's Appeal.

An award of money to a lien creditor who has no lien, cannot be questioned in a collateral proceeding depending in the same court.

G. purchased lot No. 1 on the 14th December 1835. On the 24th March 1836 B. obtained judgment against G., which was revived on the 18th May 1840. On the 21st March 1838 G. purchased lot No. 2. Y. obtained judgment against G. on the 3d December 1838. On a sheriff's sale in 1842 of No. 2, the proceeds were decreed to B.'s judgment. No. 1 was afterwards sold by the sheriff. *Held* that the equitable right of substitution did not apply so as to give Y. the amount of his judgment out of the proceeds of No. 1.

APPEAL by Edwin Yerkes from the decision of the Common Pleas of *Bucks* county. This was a case stated as follows:

James Burson, to the use of Evelina Burson, v. James Gordon, Giles Gordon, and Stephen Gordon. Vend. ex. to April Term 1843. Rule to show cause why Edwin Yerkes shall not take out of the sheriff's hands the amount of his judgment.

The property of James Gordon, one of the above defendants, sold by the sheriff on the above execution, was purchased by him the 14th December 1835. The date of the judgment on which the above execution issued is March 24th 1836, revived May 18th 1840, and is the first judgment entered after the purchase of said land. On the 21st March 1838, James Gordon purchased another property called the Thompson property. On this property there were a mortgage and several judgments, which were paid by the sheriff according to priority. After the payment of these judgments there was a balance in the sheriff's hands of $830.33. The judgment of Edwin Yerkes was entered on the 3d December 1838, and was prior to Burson's judgment on the Thompson property. The last-mentioned property was sold on William Dilworth's execution. A rule was entered in the above case of Dilworth's execution, to show cause why James Burson should not take out of the sheriff's hands the above sum of $830.33. The 12th August 1842, the court ordered and directed that the sum of $830.33 be credited on the execution as having been paid on the 20th November 1841 to James Burson. The sheriff had paid, on the 20th November 1841, the above sum of $830.33, supposing Burson's judgment to have priority. The judgment on which the first above execution issued was assigned by James Burson to Evelina Burson, the 18th of August 1842, at which time James Burson became and still is insolvent. On hearing the rule taken by Burson in Dilworth's execution, Mr M'Dowell was counsel for both Edwin Yerkes and James Burson, and believed at the time that Burson's judgment, being the first entered, was entitled to the money ($830.33), and it was so supposed and believed by all the counsel and the court.

The question now submitted to the court is, whether Edwin Yerkes shall be permitted to be substituted in the place of the plaintiff in the first execution named, viz., James Burson to the use of Evelina Burson, and to take out of the proceeds of the sale on that execution, a sum sufficient to cover the amount received by Burson on the execution issued by Dilworth v. Gordon, viz., $830.33. All records and papers touching the execution to be considered as in evidence. The case stated to be in the nature of a special verdict, either party to have a right to a writ of error or appeal, without affidavit or bail.

On argument of the case stated, the court discharged the rule. From this decision Yerkes appealed.

*Wright* for the appellant.

*Dubois,* contra.

The opinion of the Court was delivered by

GIBSON, C. J. — Whatever the truth, we must take it as a conclusion of law, that the surplus money made on Dilworth's execution by the sale of the Thompson property was legally applied to Burson's judgment, though, as regards that property, it was posterior in lien to the judgment of Yerkes, the present applicant, which was by some unaccountable oversight postponed. In *Gratz* v. *The Lancaster Bank* (17 *Serg. & R.* 278), an award of money to one as a lien creditor who had no lien at all, was held conclusive as an adjudication in another court; nor can it, for the same reason, be questioned in a collateral proceeding depending in the same court. Now, though the money made on Dilworth's execution was certainly misapplied in awarding it to Burson's judgment, which was prior to that of Yerkes only so far as regards the property whose proceeds are now in contest, the misapplication was sanctioned by a decree which precludes us from compensating the error by an erroneous decree on the other side. The appellant's case is undoubtedly an unfortunate one; but the hardship of it is attributable to his own supineness. Had he asserted his right at the proper time, the money would have been awarded to him; but as it was actually awarded to another by common consent, founded in common mistake, we are bound to say that, in contemplation of law, the award was right, In *Gratz* v. *The Lancaster Bank* we knew the application of the money to have been wrong, without presuming to question its propriety; and though we know the award of the money to Burson's judgment to have been equally so, we are concluded by it in this collateral proceeding. Were we indeed to form an opinion on the basis of the dates assumed in the case stated, we might doubt even whether the appropriation were not proper; for it is stated that the Thompson property was purchased before Yerkes had obtained his judgment; and it does not appear to have been revived before the revival of Burson's

[Yerkes's Appeal.]

judgment against Gordon, the owner of each piece of property, and the common debtor. But as it is an admitted part of the case that the judgment of Yerkes was prior in lien to Burson's judgment as regards the Thompson property, though posterior to it as regards the property on which Burson subsequently levied his execution, we must take the fact to be so; and consequently that there is an error in the dates as they stand on our paper-books. In any event, we dare not draw into question the legality of the appropriation on Dilworth's execution, which vested in Burson such a legal right as the merely benevolent doctrine of substitution has never been allowed to disturb.

Decree affirmed.